UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
HERBERT SHAVER,                         :
                        Plaintiff,      :
                                        :        18cv5700(DLC)
            -v-                         :
                                        :        OPINION AND ORDER
MEDICOM WORLDWIDE, INC., MEDICOM        :
EDUCATION GROUP INC., CORONA            :
PRODUCTIONS, CORP., JEFFERY DUANE       :
STURGIS and JEFFERY DAVID STURGIS,      :
                                        :
                        Defendants.     :
                                        :
---------------------------------------- X

APPEARANCES

For the plaintiff:
Daniel Altaras
Derek Smith Law Group, PLLC
One Penn Plaza, Suite 4905
New York, New York 10119

For the defendants:
Robert W. Small
Reger Rizzo & Darnall LLP
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, Pennsylvania 19104

DENISE COTE, District Judge:

     Plaintiff Herbert Shaver alleges that his former employers,

Medicom Worldwide, Inc. ("Medicom Worldwide"), Medicom Education

Group Inc. ("Medicom Education"), Corona Productions, Corp.

("Corona"), Jeffery Duane Sturgis ("Duane Sturgis") and Jeffery

David Sturgis ("David Sturgis"), discriminated and retaliated

against him in violation of the Age Discrimination in Employment

Act, 29 U.S.C. § 623 et seq. ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. The defendants have moved to dismiss the amended complaint ("FAC"). For the reasons that follow, the motion is denied.


## **Background**

The following facts are taken from the FAC. Shaver was hired by Medicom Worldwide in June 2003 to be the Director of Finance. In 2004, Medicom Worldwide was divided into three companies: Medicom Worldwide, Medicom Education, and Corona (collectively, "Medicom Entities"). Medicom Worldwide, Medicom Education, and Corona are each incorporated in Pennsylvania with a principal place of business in Pennsylvania. Duane Sturgis owns the Medicom Entities, and David Sturgis is an officer of the Medicom Entities. David Sturgis is Duane Sturgis's son. Both individual defendants had supervisory authority over Shaver.

Shaver worked for all three entities, had business cards and letterhead indicating that he was the Chief Financial Officer ("CFO") for each corporate entity, and often called clients and wrote letters to vendors as the CFO of each entity. The FAC alleges that "[a]t all times material, Defendant Medicom Worldwide, Defendant Medicom Education, and Defendant Corona

Productions were joint employers of plaintiff." The FAC also states that "[t]he exact number of employees at [the] Medicom [entities] is unknown, but upon information and belief, there are well more than the statutory minimum."

Throughout Shaver's employment, David Sturgis made comments about Shaver's age, which are described in some detail in the FAC. Shaver complained about these comments three times to the director of human resources for the Medicom Entities between May 2015 and December 2016. Shaver also reported David Sturgis's comments to Duane Sturgis in early 2016. In 2016 and 2017, David Sturgis discriminated and retaliated against Shaver by systematically taking away Shaver's fringe benefits and job duties, including "a company cell phone, auto and repair expenses, and access to the company petty cash."

In December 2016, Duane Sturgis decided to sell the Medicom Entities to David Sturgis. When Shaver learned of this, he informed Duane Sturgis that he was concerned that David Sturgis would fire him or significantly reduce his hours, as David Sturgis had done with two other employees over the age of 50. As a result, Duane Sturgis and Shaver agreed that Shaver would receive a six-month severance package in the event Shaver was discharged.

In early 2017, David Sturgis increased the frequency of negative comments he made to Shaver about his age. "These

comments were made to . . . Shaver on the phone while he was working out of his home office located in New York."  Shaver again reported these comments to Duane Sturgis.  In early 2017, Duane Sturgis sold the Medicom Entities to David Sturgis.  At that time, the Medicom Entities removed two employees over 50 years of age from full-time positions, reducing the employees to two shifts per week.  This change caused the two employees to "lose their employee benefits and severance at a full-time rate."

On April 28, 2017, the Medicom Entities discharged Shaver. The Medicom Entities offered Shaver "a substantially similar position for only two days a week at forty (40) percent of his previous salary" and without any employee benefits.  Shaver accepted the new position but asked what severance he would receive for being discharged from his full-time position.  In a heated exchange, David Sturgis rejected the request.  A few days later, Medicom Education offered Shaver a two-month severance package.  Shaver rejected that package as inconsistent with his agreement with Duane Sturgis, and was thereafter discharged.

Shaver filed a charge of unlawful discrimination with the EEOC on December 19, 2017 (the "EEOC Charge").  On April 30, 2018, Shaver received a right to sue letter from the EEOC.  The original complaint was filed in this action on June 22 and did not name Corona as a defendant.

The defendants moved to dismiss the original complaint on August 8, 2018. An Order filed August 9 directed Shaver to file any amended complaint or to oppose the motion to dismiss by August 31, and noted that "[i]t is unlikely that [Shaver] will have a further opportunity to amend." Shaver responded to the motion to dismiss by filing the FAC on August 21, adding Corona as a defendant. The defendants filed a new motion to dismiss on September 7, which became fully submitted on October 9.

## Discussion

The defendants move to dismiss for lack of personal jurisdiction and for failure to state a claim. These arguments are addressed in turn.[1]

I. Personal Jurisdiction

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 342 (2d Cir. 2018) (citation omitted). "A plaintiff

---

[1] The defendants also move to dismiss on the ground of forum non conveniens. "The common-law doctrine of forum non conveniens has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) (citation omitted). The defendants seek a federal forum in Pennsylvania. Accordingly, the motion to dismiss on forum non conveniens grounds is denied.

must have a state-law statutory basis for jurisdiction and demonstrate that the exercise of personal jurisdiction comports with due process." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 82 (2d Cir. 2018). "In evaluating whether the requisite showing has been made, [a court must] construe the pleadings and any supporting materials in the light most favorable to the plaintiff[]." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) ("Licci II").

A. New York Law Basis for Jurisdiction

The parties agree that personal jurisdiction, should it exist, would be based on the New York long-arm statute, which provides in relevant part as follows:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state.

N.Y.C.P.L.R. § 302(a)(1). "A defendant need not physically enter New York State in order to transact business, so long as the defendant's activities here were purposeful." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (citation omitted). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Eades v.

Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).  If a defendant has transacted business within the state within the meaning of New York C.P.L.R. § 302(a)(1), state law provides a basis for jurisdiction if "the claim asserted . . . arise[s] from that business activity."  Id. (citation omitted).

Construing the pleadings and affidavits in the light most favorable to Shaver, he has established a prima facie case that personal jurisdiction exists over the defendants in New York. The FAC alleges that Shaver "regularly worked" for the Medicom Entities "out of his home office" in this state.  The FAC further alleges that David Sturgis made discriminatory comments to Shaver about Shaver's age "on the phone while [Shaver] was working out of his home office located in New York."  An affidavit submitted by David Sturgis admits that David Sturgis "agreed" that Shaver could work from home two days per week.

By allowing Shaver to work from his home office in New York on a part-time basis, the Medicom Entities voluntarily extended their workforce into this state.  In particular, the defendants have not rebutted or undermined the allegation in the FAC that Shaver worked from home on a "regular[]" basis.  This indefinite course of conduct is sufficient, under the New York long-arm statute, to describe purposeful activity directed to New York and to provide a basis for personal jurisdiction.

B. Due Process

Even if authorized by state law, personal jurisdiction may nonetheless be improper if it would violate the defendants' due process rights.

> Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Where, as in this case, the plaintiffs ask the district court to assert specific jurisdiction over the defendants, the jurisdictional inquiry focuses on the affiliation between the forum and the underlying controversy.

Licci II, 732 F.3d at 169-70 (citation omitted). "Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." SPV Osus, 882 F.3d at 344 (citation omitted). The Second Circuit has observed that it would be a "rare" case where New York C.P.L.R. § 302(a)(1) was satisfied by a defendant's transaction of business but the assertion of specific jurisdiction arising out of the transaction nonetheless violated due process. See Licci II, 732 F.3d at 170.

The exercise of personal jurisdiction over the defendants in this case does not violate due process. The defendants' course of conduct provides both minimum contacts and a sufficient nexus between those contacts and Shaver's age discrimination claims. Accordingly, the defendants' motion to

dismiss for lack of personal jurisdiction is denied.

II. Failure to State a Claim

The defendants move to dismiss the FAC on two principal grounds. First, Corona argues that Shaver's ADEA claim is untimely as to Corona, one of three entity defendants that Shaver asserts employed him. Second, the defendants contend that the FAC does not adequately allege that Shaver was employed by an employer with the ADEA's statutory minimum of twenty employees.

A. Relation Back

Corona was first named in the FAC, which was filed more than 90 days after the plaintiff received his right to sue letter from the EEOC. Because the FAC relates back to the original complaint, however, the motion to dismiss Shaver's ADEA claim against Corona is denied.

An ADEA claim must be brought within 90 days of a plaintiff receiving a right to sue letter from the EEOC. See 29 U.S.C. § 626(e). An amended complaint that is filed after a statute of limitations has run may relate back if:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or
>
> (C) the amendment changes the party or the naming of

the party against whom a claim is asserted, if Rule
15(c)(1)(B) is satisfied and if, within the period
provided by Rule 4(m) for serving the summons and
complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will
not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would
have been brought against it, but for a mistake
concerning the proper party's identity.

Fed. R. Civ. P. 15(c). Because the FAC added Corona as a

defendant more than 90 days after the EEOC issued Shaver a right

to sue letter, the three requirements of 15(c)(1)(C) must be

satisfied.[2]

Corona was named in Shaver's EEOC complaint. And, the FAC

alleges discrimination arising out of the same conduct described

in Shaver's original complaint. These facts satisfy the first

two requirements of relation back. Accordingly, the FAC relates

back if Corona "knew or should have known" that the action would

have been brought against it, but for a mistake concerning the

proper party's identity. Fed. R. Civ. P. 15(c)(1)(C)(ii). "[A]

plaintiff's knowledge of the existence of a party does not

foreclose the possibility that she has made a mistake of

identity about which that party should have been aware . . . ."

Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550 (2010).

---

[2] The 90-day time to file a complaint after receiving a right-to-
sue letter from the EEOC is treated as a statute of limitations.
See Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886,
889 (2d Cir. 1995).

In fact, "[t]he reasonableness of [a plaintiff's] mistake is not itself at issue" in the Rule 15(c)(1)(C)(ii) inquiry. Id. at 549.

Shaver's brief opposing the motion to dismiss explains that Shaver made a mistake about Corona's role in employing him. He contends that he realized his error when the defendants moved to dismiss his original complaint, and promptly amended to correct his error. Under Krupski, this is sufficient to allow the claim against Corona to relate back to the original complaint. Given the interrelated business model of the three Medicom Entities alleged in the FAC, Corona could reasonably have expected that Shaver would add it as a defendant to this action. Corona does not identify any prejudice it has suffered from the delay in naming it as a defendant. Accordingly, the motion to dismiss the ADEA claim against Corona is denied.

B. Employer Size

The defendants' second principal ground for seeking dismissal is their contention that none of the Medicom Entities employs the 20-employee statutory minimum for the ADEA to apply. For the reasons that follow, this portion of the motion is also denied.[3]

---

[3] The defendants have submitted extrinsic evidence in support of their contention that none of the Medicom Entities employed at least 20 employees. This evidence may not be considered at this stage. The Supreme Court has explained that Title VII's minimum

As the defendants acknowledge, there are at least two theories whereby employees formally employed by separate corporate entities may be aggregated. These theories are a joint employer and a single employer theory. See generally Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 197-98 (2d Cir. 2005). Each theory is a fact-intensive inquiry that relates principally to how each purportedly separate employer did or did not share control over its employees, and each theory requires the balancing of several factors unique to each case. On a single employer theory, a finding that nominally distinct entities should be deemed a single integrated employer permits a court to aggregate all employees of those entities. See id. at 198. On a joint employer theory, the court must examine the workplace realities of each employee to determine whether an employee formally employed by one company is jointly employed by other companies. See id. at 199.

The FAC plausibly alleges facts consistent with joint and single employer theories of liability. The FAC alleges that Shaver, and perhaps other employees, performed similar services

---

employer size element is nonjurisdictional, and as such is properly the subject of a Rule 12(b)(6), rather than Rule 12(b)(1), motion. See Arbaugh v. Y&H Corp., 546 U.S. 500, 515-16 (2006). As is true of the minimum employer size provision of Title VII, the ADEA's minimum employer size provision is found in a "definitions" section that does not speak in jurisdictional terms. Compare 42 U.S.C. § 2000e(b) (Title VII), with 29 U.S.C. § 630(b) (ADEA).

for each of the three entity defendants.  The FAC alleges that Duane Sturgis and David Sturgis controlled each entity.  These allegations plausibly allege that the three entities acted as a single employer for its employees, or that certain employees of one or more of the entities should be counted as jointly employed by the other entities.  As evidenced by this discussion (as well as by the defendants' submission of extrinsic evidence in support of their motion) these are complex factual questions that cannot be resolved in this case on a motion to dismiss.

III. State Law Claims

The defendants' motion to dismiss Shaver's state law claims assumes that Shaver's ADEA claims have been dismissed.  Because his ADEA claims survive, the defendants' motion to dismiss is denied as to Shaver's state law claims.


## Conclusion

The defendants' August 20, 2018 motion to dismiss is denied.

Dated:    New York, New York
          November 28, 2018

                              _____
                                        DENISE COTE
                              United States District Judge